IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02506-ZLW-BNB

EDWARD ALLEN,

Plaintiff,

v.

ARISTEDES ZAVARAS,
J. HASSENFRITZ,
MS. GRAHAM,
COLORADO DEPARTMENT OF CORRECTIONS, and
CORRECTIONS CORPORATION OF AMERICA,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the following motions:

1. **State Defendants Zavaras and the Colorado Department of Corrections' Motion to Dismiss the Complaint** [Doc. #21, filed 03/18/2009] (the "State Defendants' Motion"); and

2. **Motion to Dismiss from Defendants Hassenfritz and Corrections Corporation of America** [Doc. #34, filed 04/21/2009] (the "CCA Defendants' Motion").

I respectfully RECOMMEND that the State Defendants' Motion be GRANTED IN PART and DENIED IN PART. I further RECOMMEND that the CCA Defendants' Motion be GRANTED.

**I.  STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific

allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Prisoner Complaint (the "Complaint") on November 10, 2008 [Doc. #3]. The Complaint contains the following allegations:

1. On May 14, 2004, the plaintiff was sentenced to incarceration in the Colorado Department of Corrections ("DOC"). *Complaint*, p. 3.

2. On September 4, 2004, the plaintiff was transferred from the Denver Reception and Diagnostic Center to the Fremont Correctional Facility ("Fremont"). Id. Upon his arrival, the case manager, Mr. Jones, informed the plaintiff that he was recommending that the plaintiff participate in the DOC's sex offender treatment program and that if he did not cooperate they would send him to a place where "things could be done." Id.

3. In 2005 and 2006, the plaintiff received "an application / questionnaire" from the DOC's sex offender treatment program which required him to confess to a crime he allegedly committed. Id. at p. 3a. The plaintiff refused to "testify against himself and or confess his guilt." Id.

4. On December 14, 2006, the plaintiff was transferred to North Fork Correctional Facility in Beckham County, Oklahoma. On February 29, 2008, he was transferred to Territorial

Prison. On March 7, 2008, he was transferred to Fremont. He was not offered the sex offender treatment program while at Fremont. Id.

5. On April 29, 2008, as ordered by defendant Zavaras, the plaintiff was transferred to Kit Carson Correctional Center ("KCCC"). Upon arrival, he was housed in "Echo C Unit." On May 6, 2008, the plaintiff was moved to "Echo B Unit" with another inmate, David Collins. While in their cell, the plaintiff and Mr. Collins were approached by two white supremacist gang members who demanded that they either pay rent to live in the unit or fight. The demand was made because the plaintiff and Mr. Collins are sex offenders. Id.

6. The plaintiff and Mr. Collins refused to pay rent. The two white supremacist gang members physically assaulted them. The plaintiff did not suffer any injury. Mr. Collins suffered sore ribs. Id.

7. The plaintiff reported the assault to defendant Hassenfritz, the Unit Manager. The plaintiff identified the assailants from pictures shown to him by Hassenfritz. The plaintiff and Mr. Collins remained in Echo B Unit until May 13, 2008, when they were moved to Echo A Unit. Id.

8. On September 10, 2008, the plaintiff was approached by a white supremacist gang member in the kitchen bakery area where they both worked. The white supremacist gang member told the plaintiff to quit his job because the gang member would not allow a sex offender to work with him. The plaintiff refused to quit his job, and the gang member assaulted the plaintiff. The plaintiff suffered a cut on his right hand. Id.

9. Ms. Graham, the Kitchen Supervisor, moved the gang member to a different department in the kitchen. At the time the plaintiff filed his Complaint, the gang member still worked in the other kitchen department, and the plaintiff still worked in the bakery. Id. at. p. 3b.

10. On October 29, 2008, the plaintiff was approached in his cell by a white supremacist gang member who told him "he was ordered to do this by his boss." He then proceeded to assault the plaintiff. He told the plaintiff as he left that his boss did not want the plaintiff in the pod. The plaintiff suffered a cut above his right eye; a black eye; a cut inside his mouth; a swollen temple; a swollen cheek; and swollen lips. Id.

11. The plaintiff went to the "med line" shortly after the assault. He asked three nurses if he could see someone about his face. The nurses laughed and said "did you fall down?" Id.

12. On October 30, 2008, the plaintiff submitted a kite for treatment of his face. On October 31, 2008, he was treated by medical staff and started on Ibuprofen and antibiotics. Id.

13. Sometime between October 30, 2008, and October 31, 2008, the inmate the plaintiff believes to be the "boss" was moved out of the pod. The plaintiff still lives in the same pod with his assailant. Id.

14. All staff who were approached by the plaintiff made it clear that they did not want to know what happened to the plaintiff or who assaulted the plaintiff. Id.

15. On November 4, 2008, the plaintiff was taken to the medical department. He received approximately twelve x-rays of his head. Id.

The Complaint asserts two claims for relief. Claim One alleges that the actions and inactions of Mr. Hassenfritz, Ms. Graham, and the "CCA staff" violated the plaintiff's Eighth Amendment rights because they were deliberately indifferent to his safety. Id. at pp. 4-4a.

Claim Two alleges that defendant Zavaras and the DOC have been deliberately indifferent to the plaintiff's safety in violation of the Eighth and Fourteenth Amendments. Id. at p. 5.

The plaintiff is suing the individual defendants in their individual capacities "for nominal, punitive and emotional damages." Id. at p. 3. "He has named the Colorado Department of Corrections and Corrections Corporation of America as defendants for injunctive relief."[1] Id.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

#### A. State Defendants' Motion

#### 1. Eleventh Amendment Immunity

The State Defendants assert that Eleventh Amendment immunity bars any claims against the DOC. *State Defendants' Motion*, p.3, n.2 and p. 5. The defendants are asserting a facial challenge to the Complaint's allegations as to subject matter jurisdiction. Therefore, I accept the allegations of the Complaint as true. Holt, 46 F.3d at 1003.

---

[1] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction in suits against a state or state agency either for money damages or for injunctive relief. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1196 (10th Cir. 1999). The DOC is an agency of the state. Accordingly, the State Defendants' Motion should be granted insofar as it seeks dismissal of all claims against the DOC.

### 2. Qualified Immunity

The defendants assert that Zavaras is entitled to qualified immunity. *State Defendants' Motion*, p. 12. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages where their conduct, when committed, did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[2]

The plaintiff asserts Claim Two under both the Eighth Amendment and the Fourteenth Amendment. However, the claim raises issues solely related to his conditions of confinement and is appropriately analyzed as an Eighth Amendment claim rather than a due process claim. Berry v. City of Muskogee, 900 F.2d 1489, 1493-94 (10th Cir. 1990).

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

---

[2]The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

Claim Two alleges that defendant Zavaras had knowledge of long-standing, pervasive, well-documented, and escalating extortions, assaults, and murders committed throughout the DOC against sex offenders by gang members, predominantly white supremacists; the defendant has been made aware of the problem through DOC criminal investigations, prisoner and victim incident statements, DOC and private prison employee-witnessed accounts, and inmate informants; the problem is fully documented in DOC files and records; Zavaras has deliberately created policies and practices of placing convicted sex offenders with gang members, even when there are documented custody issues between them, so that there is no reasonable measure of protection and safety for convicted sex offenders; the plaintiff was deliberately subjected to the defendants' policy; and Zavaras placed him at KCCC where he was repeatedly assaulted by white supremacist gang members.

Construing the Complaint liberally, as I must, the plaintiff alleges that Zavaras had an unwritten policy to place sex offenders with gang members; that he ordered the plaintiff to be

9

placed with gang members at KCCC; and that the placement had the foreseeable consequence that the plaintiff would be subjected to coercion, extortion, and physical violence. These allegations are sufficient to state a plausible claim against Zavaras for deliberate indifference to the plaintiff's safety in violation of the Eighth Amendment.

An inmate's right to be free from a prison official's deliberate indifference to safety was clearly established in Farmer v. Brennan, 511 U.S. 825, 842-43 (1994) (stating that "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk"). Therefore, Zavaras is not entitled to qualified immunity for this claim.

The State Defendants' Motion should be denied insofar as it seeks dismissal of Claim Two as against defendant Zavaras.

### B.  CCA Defendants' Motion

#### 1.  Claim One as Against Mr. Hassenfritz

The CCA Defendants argue that the plaintiff has failed to state a claim upon which relief can be granted as to defendant Hassenfritz because there are no allegations of personal participation or deliberate indifference. *CCA Defendants' Motion*, pp. 5-9.

The plaintiff summarily describes Hassenfritz's personal participation as follows: the plaintiff was placed in "Echo B Unit" on May 6, 2008; he and his cell mate were assaulted by two gang members on an unspecified date after May 6, 2008; the plaintiff reported the assault to

Hassenfritz; Hassenfritz showed the plaintiff pictures to help him identify the assailants; and the plaintiff and his cell mate were moved to a different unit on May 13, 2008. There are no allegations from which to infer that Hassenfritz had any direct responsibility for the assaults or that he was deliberately indifferent to the plaintiff's safety. The allegations are not sufficient to impose Eighth Amendment liability against Hassenfritz.

### 2. Claim One as Against CCA

The CCA Defendants assert that the plaintiff fails to state a claim against CCA. *CCA Defendants' Motion*, pp. 9-12.

In Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. Id. at 690. A custom is a "persistent and widespread ... practice[] of ... officials." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

"[I]t is now well settled that Monell also extends to private defendants sued under § 1983." Smedley v. Corrections Corp. of America, 175 Fed.Appx. 943, 946 (10th Cir. 2005) (citing Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir.2003)). "As such, a private actor such as CCA 'cannot be held liable solely because it employs a tortfeasor--or, in other words . . .

cannot be held liable under § 1983 on a respondeat superior theory.'" Id. (citing Monell, 436 U.S. at 691).

The Complaint does not allege that any custom or policy of CCA is responsible for the deprivation of the plaintiff's constitutional rights. To the contrary, the Complaint alleges that the plaintiff's rights were violated as a result of the DOC's policies. The CCA Defendants' Motion should be granted to the extent it seeks dismissal of Claim One as against CCA.

### C. Defendant Graham

Claim One alleges that Ms. Graham was deliberately indifferent to the plaintiff's safety.[3] The plaintiff's claim against Ms. Graham is based solely on the following allegations: on September 10, 2008, the plaintiff was approached by a white supremacist gang member in the kitchen bakery area where they both worked; the white supremacist gang member told the plaintiff to quit his job because he would not allow a sex offender to work with him; the plaintiff refused to quit his job; the white supremacist gang member assaulted the plaintiff.; and Ms. Graham, the Kitchen Supervisor, moved the white supremacist gang member to a different department in the kitchen.

The plaintiff is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915 in a prisoner's civil rights case. Pursuant to 28 U.S.C. § 1915A, this court is required to review the plaintiff's Complaint to determine if the Complaint or any portion of the Complaint is legally frivolous.[4] A

---

[3] Ms. Graham has not been served with the Complaint.

[4] These determinations are "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

legally frivolous claim is one in which the plaintiff asserts facts that do not support an arguable claim. See Neitzke v. Williams, 490 U.S. 319, 324-29 (1989).

Here, the plaintiff does not allege any deliberate indifference on the part of Ms. Graham. To the contrary, he alleges that she moved the white supremacist gang member out of the plaintiff's section of the kitchen after he reported the assault to her. Claim One as against Ms. Graham is legally frivolous.

## IV.  CONCLUSION

I respectfully RECOMMEND that State Defendants Zavaras and the Colorado Department of Corrections' Motion to Dismiss the Complaint [Doc. #21] be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED insofar as it seeks dismissal of all claims against the DOC; and

2. DENIED insofar as it seeks dismissal of Claim Two against defendant Zavaras.

I further RECOMMEND that the Motion to Dismiss from Defendants Hassenfritz and Corrections Corporation of America [Doc. #34] be GRANTED.

I further RECOMMEND that Claim One as against Ms. Graham be DISMISSED as legally frivolous under 28 U.S.C. § 1915A

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 12, 2009.

                                                   BY THE COURT:

                                                   <u> s/ Boyd N. Boland                      </u>
                                                   United States Magistrate Judge