IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02506-ZLW-BNB

EDWARD ALLEN,

Plaintiff,

v.

ARISTEDES ZAVARAS,

Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the following motions:

1. **Zavaras' Motion for Summary Judgment** [Doc. #143, filed 04/30/2010] ("Zavaras' Motion"); and

2. The plaintiff's **Motion for Summary Judgment** [Doc. #138, filed 04/19/2010] ("Plaintiff's Motion").

I respectfully RECOMMEND that Zavaras' Motion be GRANTED and that the Plaintiff's Motion be DENIED.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

The defendant asserts that he is entitled to qualified immunity. *Zavaras' Motion*, p. 6. Qualified immunity shields government officials from liability for civil damages provided that

their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts the defense of qualified immunity on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[1] Id. "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Medina, 252 F.3d at 1128.

---

[1] The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

## II.  BACKGROUND

The plaintiff filed his Prisoner Complaint (the "Complaint") on November 10, 2008 [Doc. #3].  The Complaint asserts two claims for relief.  Claim One and defendants Hassenfritz, Graham, the Colorado Department of Corrections ("DOC"), and the Corrections Corporation of America were dismissed [Doc. #157].  Claim Two remains as against defendant Zavaras for deliberate indifference to the plaintiff's safety in violation of the Eighth Amendment.  The plaintiff is suing Zavaras in his individual capacity.  *Complaint*, p. 3.[2]  He seeks injunctive relief and "nominal, punitive and emotional damages."  Id. at p. 8.

## III.  UNDISPUTED MATERIAL FACTS

1. On May 14, 2004, the plaintiff was sentenced to incarceration in the DOC.

2. On September 4, 2004, the plaintiff was transferred from the Denver Reception and Diagnostic Center to the Fremont Correctional Facility.

3. On December 14, 2006, the plaintiff was transferred to the North Fork Correctional Facility.

4. On March 7, 2008, the plaintiff was transferred to the Fremont Correctional Facility.

5. On April 29, 2008, the plaintiff was transferred to the Kit Carson Correctional Facility.

6. On July 30, 2009, the plaintiff was transferred to the Sterling Correctional Facility.

7. The plaintiff has never met Zavaras.

8. The plaintiff believes that Zavaras is liable because he is a supervisor.

---

[2]Citation is to the page numbers of the Complaint as they were assigned by the plaintiff.

## IV. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Claim Two alleges that Zavaras has knowledge of the long-standing, pervasive, well-documented, and escalating extortions, assaults, and murders committed throughout the DOC against sex offenders by gang members, predominantly white supremacists; Zavaras has been made aware of the problem through DOC criminal investigations, prisoner and victim incident statements, DOC and private prison employee-witnessed accounts, and inmate informants; the problem is fully documented in DOC files and records; Zavaras has deliberately created policies and practices of placing convicted sex offenders with gang members, even when there are documented custody issues between them, so that there is no reasonable measure of protection and safety for convicted sex offenders; the plaintiff was deliberately subjected to the defendants' policy; and Zavaras placed him at KCCC where he was repeatedly assaulted by white supremacist gang members. *Complaint*, pp. 5-6.

In analyzing the defendants' motion to dismiss, I construed Claim Two as alleging that Zavaras has an unwritten policy to place sex offenders with gang members; that he ordered the plaintiff to be placed with gang members at the Kit Carson Correctional Facility; and that the placement had the foreseeable consequence that the plaintiff would be subjected to coercion, extortion, and physical violence. I found that these allegations were sufficient to state a

5

plausible claim against Zavaras for deliberate indifference to the plaintiff's safety in violation of the Eighth Amendment. *Recommendation of United States Magistrate Judge* [Doc. #86], pp. 9-10.

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prisoner asserting a claim for failure to protect must establish that the deprivation alleged is sufficiently serious and that the defendant acted with deliberate indifference. Id. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Zavaras asserts that he is entitled to judgment on Claim Two because he did not personally participate in the alleged Eighth Amendment violation. *Zavaras' Motion*, pp. 4-6. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a

showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

On January 22, 2010, I held an evidentiary hearing on the plaintiff's motion for a restraining order. I questioned the plaintiff in an attempt to determine if he had a substantial likelihood of succeeding on the merits of his claim against Zavaras. The transcript includes the following colloquy:

> THE COURT: Mr. Allen, what does Mr. Zavaras know about this?
>
> MR. ALLEN: What does Mr. Zavaras know about this?
>
> THE COURT: Right.
>
> MR. ALLEN: Well, for one, I filed the grievances over it.
>
> THE COURT: Where did those grievances --
>
> MR. ALLEN: The three grievances.
>
> THE COURT: -- where did those grievances go?
>
> MR. ALLEN: To his subordinates.
>
> THE COURT: Okay. What else does he know about it?
>
> MR. ALLEN: Well, like I said, like I said, one at the end discovery is the assault records of inmates. He has the records, he knows sex offenders are assaulted.
>
> THE COURT: Why do you say that?
>
> MR. ALLEN: And just for being a sex offender.
>
> THE COURT: Why do you say that? What evidence -- what do you why --do you say that?
>
> MR. ALLEN: I know Glen Davis is right now is sitting healing, because I got a letter from him last week stating that he could barely write a letter.

MR. SAYAS: Objection, hearsay.

THE COURT: Sustained, that was hearsay. But tell me why you say Mr. Zavaras has any knowledge of any of this, other than that he's the supervisor.

MR. ALLEN: He authorized it.

THE COURT: Why do you say that? What -- what do you know to support that?

MR. ALLEN: What do I know to support that? He appointed these people to watch over us.

THE COURT: All right. Anything else?

MR. ALLEN: And according to -- what was that case? I believe it was -- pardon me, Your Honor, I didn't know I was going to get into --

THE COURT: If you're looking for a case, I'm not really interested in argument on the law, what I'm interested in are facts of which you are aware which makes you say that Mr. Zavaras authorized placement of sex offenders with known gang members so that they would be intimidated or injured.

MR. ALLEN: Well, for one, it was done twice, and at Arkansas Valley they told me straight up --

MR. SAYAS: Objection, hearsay.

MR. ALLEN: -- that if I became program compliant, they would move me to a sex offender pod.

THE COURT: Okay, but that's not -- you weren't meeting with -- have you ever met with Mr. Zavaras?

MR. ALLEN: No, sir.

THE COURT: All right. Have you ever spoken to Mr. Zavaras?

MR. ALLEN: No, sir.

THE COURT: The statement about becoming program compliant, who was that made by?

MR. ALLEN: By Lieutenant Sayas. No, Lieutenant -- I'm sorry. Lieutenant -- oh, here, I know where I got it written down. (Pause) It was Ted Stanger (phonetic), 21 employee at Arkansas Valley, and I'm not sure which of the two officers that they had listed on this list was the actual officer that first stated that to me, which was either Officer Norris or Officer Valdez-Garcia -- Gonzales.

THE COURT: Why --

MR. ALLEN: One of those two --

THE COURT: Why do you think --

MR. ALLEN: -- stated it to me first --

THE COURT: All right. So --

MR. ALLEN: -- and then Lieutenant Stanger backed it up.

THE COURT: -- so why do you think that Mr. Zavaras either knew about that or had anything to do with it?

MR. ALLEN: Because they authorized -- because he authorized them to do it.

THE COURT: Why do you think he authorized it?

MR. ALLEN: He authorized them to --

MR. SAYAS: (Inaudible).

MR. ALLEN: Pardon?

THE COURT: Why do you think he authorized it? Why do you think he even knew about it?

MR. ALLEN: He put them in charge of me.

THE COURT: Okay, he's their supervisor. Anything else?

9

>MR. ALLEN: And the fact is, he's the only one that can. He's the only one that can state the policies. He's the only one that has the authority to say he can go here, he can go there, he can go there, and he can go there.
>
>THE COURT: Well, why do you think --
>
>MR. ALLEN: He's the only one.
>
>THE COURT: -- why do you think that? Do -- are you saying to me that Mr. Zavaras --
>
>MR. ALLEN: Oh, because of the --
>
>THE COURT: -- authorized each of these many moves that you've -- personally, had some personal part in authorizing these many moves that you've undergone?
>
>MR. ALLEN: According to CRS 17, CRS 17 -- I can't remember the exact number -- it states that he is the only one that can move a person from place to place, or his appointee, or I'm not sure of the exact words, I think it's 11-17-1 something, that he is the only one that has the authority to do this. He's the only one that can appoint somebody to do this.

*Transcript of Proceedings on January 22, 2010* [Doc. #111], 23:15 - 27:13

The plaintiff does not provide any evidence to show that Zavaras caused or participated in the prison officials' alleged failure to protect him. To the contrary, he admitted that he is attempting to hold Zavaras liable merely because Zavaras is the supervisor--the Executive Director--of the DOC. Accordingly, Zavaras is entitled to qualified immunity. The Motion should be granted, and judgment should enter in favor Zavaras on the plaintiff's claim against him.

The plaintiff argues that "Zavaras does not need person[al] knowlege [sic] for injunctive relief." *Plaintiff's Reply in Support of His Motion for Summary Judgement* [Doc. #148], p. (A). Without a showing of personal participation, however, Zavaras cannot be held liable in either his

individual or his official capacity. Dawson v. Johnson, 266 Fed. Appx. 713, 714-16 (10th Cir. 2008)(upholding the district court's grant of summary judgment in favor of defendants in both their official and individual capacities because the plaintiff had not shown that the defendants personally participated in the alleged constitutional deprivation).

## V. CONCLUSION

I respectfully RECOMMEND the following:

1. Zavaras' Motion for Summary Judgment [Doc. #143] be GRANTED and judgment enter in favor of Zavaras; and

2. The plaintiff's Motion for Summary Judgment [Doc. #138] be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 2, 2010.

                                              BY THE COURT:

                                              s/ Boyd N. Boland
                                              United States Magistrate Judge